UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZAHIDA KOVACEVIC,

      Plaintiff,

v.                                              Case No. 1:23-cv-135

                                                Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff filed an application for DIB on April 17, 2019, alleging a disability onset date of March 3, 2019. PageID.33. Plaintiff identified her disabling condition as lumbar degenerative disc disease. PageID.282. Plaintiff completed the 12th grade[1] and has past relevant work as a packaging machine operator and an inspector/packager. PageID.46, 283. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on November 23, 2021. PageID.33-48. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] The Court notes that plaintiff is from Bosnia, completed her formal education through the high school level in Bosnia, and required an interpreter for the administrative hearing. PageID.56, 60.

1

## I.     LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.   ALJ's DECISION

Plaintiff's claim failed at the fourth step of the evaluation.[2] At the first step, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date of March 3, 2019, and met the insured status requirements of the Social Security Act through September 30, 2023.  PageID.35.  At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease of the lumbar spine, degenerative changes to the right sternoclavicular joint, mild osteoarthritis of the bilateral knees, chronic pain syndrome, and obesity.  PageID.35.  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.38.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR

---

[2] At step four, the ALJ found that, through the date last insured, the claimant was capable of performing her past relevant work as an inspector/packager.  PageID.46.  At that point, plaintiff was determined to be not disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  However, the ALJ proceeded to step five where she made an alternative finding that there were other jobs that existed in significant numbers in the national economy that plaintiff also could have performed.  PageID.47-48.  The Court finds no authority for an ALJ to make such an alternative determination. Here, the ALJ was required to end the evaluation at step four and find that plaintiff was not disabled:

> (4) *The five-step sequential evaluation process*. The sequential evaluation process is a series of five 'steps' that we follow in a set order. See paragraph (h) of this section for an exception to this rule. **If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.** If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.  These are the five steps we follow: . . .

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. **If you can still do your past relevant work, we will find that you are not disabled.** See paragraphs (f) and (h) of this section and § 404.1560(b).

20 C.F.R. § 404.1520(a)(4)(iv) (emphasis added).  *See, e.g., Patricia T. v. Kijakazi*, No. 21-CV-1028 (GMH), 2022 WL 3583634 at *2, fn. 5 (D.D.C. Aug. 22, 2022) ("If the claimant can perform his or her past relevant work, a finding of 'not disabled' is required.") (citing 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv)).  Because the ALJ's alternative determination at step five is not authorized by the regulations, the Court will not address that finding.

404.1567(b) except that she can stand and/or walk up to four hours in an eight-hour day and may sit for up to six hours in an eight-hour day. Claimant may occasionally climb ramps and stairs; and may never climb ladders, ropes, or scaffolds. Claimant may occasionally stoop, kneel, crouch, or crawl. Claimant must avoid concentrated exposure to extreme cold, heat, humidity, and vibration. Claimant must avoid dangerous workplace hazards such as unprotected heights or dangerous moving machinery. Claimant may occasionally reach overhead with the right upper extremity and can frequently, as opposed to repetitively, reach in all other directions.

PageID.40.

The ALJ also found that plaintiff is capable of performing her past relevant work as an Inspector/Packager and that this work does not require the performance of work-related activities precluded by her residual functional capacity (RFC). PageID.46. Accordingly, the ALJ found that plaintiff was not under a disability, as defined in the Social Security Act, from March 3, 2019 (the alleged onset date) through November 23, 2021 (the date of the decision). PageID.48.

### III. DISCUSSION

Plaintiff raised two issues on appeal.[3]

**A. The ALJ erred in failing to address the regulatory factors for evaluating plaintiff's subjective statements and instead based her findings solely on selective portions of the objective medical evidence.**

Plaintiff contends that the ALJ's findings with respect to her subjective complaints are not supported by substantial evidence. Specifically, plaintiff contends that the ALJ failed to discuss any of the factors in her decision and the symptom evaluation was based solely on selective portions of the objective medical record. See Plaintiff's Brief (ECF No. 15, PageID.762).

---

[3] Plaintiff's counsel is reminded that the Court directs plaintiffs to list a "Statement of Errors" in the initial brief. See Notice (ECF No. 6) ("The initial brief . . . must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand. Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue."). In this instance, the Court will view plaintiff's "Statement of the Issues" as raising two errors.

An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365 (6th Cir. 1991). As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.

*Id.* at 1369. Despite the inexact nature of measuring a claimant's pain, the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-35 (6th Cir.1987).

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007).

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back;

6

and any other factors bearing on the limitations of the claimant to perform basic functions.

*Id*. (internal citations omitted). *See* 20 C.F.R. § 404.1529 ("How we evaluate symptoms including pain").

"It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner of Social Security*, No. 1:12 -cv-1084, 2014 WL 1577525 at *3 (W.D. Mich. April 21, 2014) (listing cases). The referenced factors appear in 20 C.F.R. § 404.1529(c)(3):

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Here, the ALJ summarized plaintiff's claim as follows:

> Claimant lives in a home with her husband and adult daughter (Hearing Testimony). She alleges disability resulting from degenerative disc disease, arthritis, chronic pain syndrome, bilateral plantar and Achilles spurs, rashes, obesity, and anxiety/depression (Exs. 5E; 25E; Hearing Testimony). Claimant further alleges that these conditions limit her ability to sit, stand, walk and otherwise move her body freely, lift objects, reach, use her hands, complete tasks, concentrate, and be in public (Ex. 17E; Hearing Testimony).

PageID.40.

Plaintiff has met the first prong of the analysis because she has underlying medically determinable physical impairments that could reasonably be expected to produce her symptoms. Here, the ALJ found that plaintiff's severe impairments including degenerative disc disease of the lumbar spine, degenerative changes to the right sternoclavicular joint, and mild osteoarthritis of the bilateral knees. PageID.35. The ALJ referred to objective evidence of these

7

impairments included the February 2019 X-rays of her lumbar spine showing degenerative changes, X-rays of the left hip showing minimal osteoarthritis, and "[a] September 2020 CT scan of the chest showed sternoclavicular joint arthritis." PageID.41-42.

As to the second prong, in addressing the intensity, persistence, and limiting effects of the symptoms on plaintiff's ability to do basic work activities, the ALJ considered her medical history from February 2019 through October 2021. PageID.41-43. In an earlier portion of the decision, the ALJ addressed some of plaintiff's subjective complaints, stating that while "[c]laimant alleges that she struggles to complete tasks and activities of daily living (Ex. 17E; Hearing Testimony)" she also reported engaging in activities such as "caring for her basic hygiene, talking to friends, and getting to appointments (Exs. 11F; 17E; Hearing Testimony)." PageID.37.

A major consideration in this case involves the extent to which plaintiff requires a walker. The ALJ acknowledged that plaintiff uses a walker, addressing the issue at three different times while evaluating the listed impairments of at the step three[4]:

> Although the claimant did obtain a walker and testified that she uses it daily, the record does not reflect that an assistive device was recommended to her by treating providers nor did treating notes indicate that she presented to appointments with the walker or a cane or that she relied upon it for ambulatory assistance; nor does the record suggest that claimant is unable to use both upper extremities given overall mild to moderate clinical examination findings, providers noting ability to use her upper extremities, largely intact or mildly impaired strength throughout, independent gait, and overall no objective or clinical findings to support the need for a mobility device (see, e.g., Exs. 17F/7; 19F; 3F/8, 17, 31, 52, 55; 8F/13).

PageID.38.

In determining plaintiff's RFC at step four, the ALJ concluded:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity,

---

[4] The ALJ used this language in evaluating Listing 1.15 (Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root) (PageID.38), Listing 1.16 (Lumbar Spinal Stenosis Resulting in Compromise of the Cauda Equina) (PageID.39), and Listing 1.18 (Abnormality of a Major Joint in Any Extremity) (PageID.39).

persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

In reviewing the claimant's statements, the objective medical studies and clinical examination findings do not fully support her alleged symptoms and limitations. For example, the MRI of the lumbar spine demonstrated moderate multilevel degenerative disc disease but did not note any severe canal stenosis or any nerve root involvement. The XR of her lumbar spine did not show any instability. The claimant consulted with a neuro surgeon, Dr. Googe, who recommended an EMG. The EMG was negative for any radiculopathy or neuropathy. There was no further follow up with the neuro surgeon. The claimant indicated she could not attend physical therapy as she did not have transportation, however she was able to obtain transportation to her regular doctor appointments. Although the claimant testified that she requires a walker for ambulation, the claimant was noted frequently to ambulate independently, although at times with antalgic gait. She is consistently noted with normal strength and no atrophy of the lower extremities is observed. The record establishes that clinical examination findings and objective medical studies have been moderate overall and stable. Although the claimant testified that she uses a walker, I find that the evidence does not support the need for assistance with ambulation and that an assistive device is not a medical necessity. The record does not indicate that the claimant had any difficulties with balance. Further, the record generally fails to note any assistive device present at her medical appointments. Claimant has further acknowledged at least some improvement with medications. The foregoing suggests that the claimant's symptoms may not have been as limiting as has been alleged in connection with this application.

Therefore find that the claimant's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms are not fully supported by the record (see SSR 16-3p).

PageID.43-44.

Plaintiff points out that the administrative record includes a number of relevant matters not addressed in the ALJ's opinion such as: plaintiff has not driven in years and relies on her daughter to drive her places; plaintiff needs assistance with dressing, preparing meals, and using the toilet; and, plaintiff testified at the hearing that she had difficulty sitting for a long periods of time due to pain. *See* Plaintiff's Brief at PageID.766-769. In addition, as discussed, *infra*, the record reflects that plaintiff did appear at two medical appointments using a walker.

9

While the ALJ is not required to discuss every factor listed in § 404.1529(c)(3) or conduct a factor-by-factor analysis, *see Pratt* 2014 WL 1577525 at *3, the ALJ's review of the evidence did not address all of plaintiff's symptoms which had limiting effects on her ability to do basic work activities.  The Court is aware that an ALJ's evaluation of plaintiff's pain is inexact and that measuring plaintiff's pain "cannot be easily reduced to a matter of neat calculations."  *See Jones*, 945 F.2d at 1369.  However, in performing the evaluation "an 'ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.'" *Lowery v. Commissioner, Social Security Administration*, 55 Fed. Appx. 333, 339 (6th Cir. 2003) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).  Given the record in this case, the ALJ did articulate and explain some of plaintiff's symptoms which did not favor her ultimate conclusion.  In short, the Court cannot follow the path of the ALJ's reasoning with respect to the limiting effect of plaintiff's symptoms.  Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should re-evaluate the limiting effect of plaintiff's symptoms.

> **B. The ALJ's RFC assessment is unsupported by substantial evidence where the ALJ did not assess the effect of all of plaintiff's impairment-related restrictions on her ability to perform work at the light exertional level on a sustained basis.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  *See* 20 C.F.R. § 404.1545.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In determining the RFC, the ALJ considers impairments that are both "severe" and "not severe", *see* 20 C.F.R. § 404.1545,

"based on all the relevant medical and other evidence in [the claimant's] case record," 20 C.F.R. § 404.1520(e).

Plaintiff contends that the ALJ's RFC assessment "does not consider the total limiting effect of [p]laintiff's degenerative disc disease of the lumbar spine and osteoarthritis of the bilateral knees on her ability to perform work at a light exertional level where objective and evidence of record indicates that [p]laintiff would not be able to sit, stand, or walk for the durational requirements of either sedentary or light work." Plaintiff's Brief at PageID.770. Although the ALJ found that plaintiff could perform light work, plaintiff's argument refers to both sedentary and light work, citing 20 C.F.R. § 404.1567(b) ("If someone can do light work, we [the Agency] determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). *Id*. at PageID.772.

As an example, plaintiff contends that the ALJ is wrong in finding that "[t]he record does not indicate that the claimant had any difficulties with balance" and that "the record generally fails to note any assistive device present at her medical appointments . . . . The foregoing suggests that the claimant's symptoms may not have been as limiting as has been alleged in connection with this application." PageID.44.[5]

---

[5] Plaintiff cites SSR 96-9p for the proposition that "if an individual is limited in balancing even when standing or walking on level terrain, there may be a significant erosion of the unskilled sedentary occupation base." Plaintiff's brief at PageID.772. Plaintiff's reference to SSR-96-9p ("Determining capability to do other work--implications of a residual functional capacity for less than a full range of sedentary work") is not relevant because the guidance in this SSR is limited to an ALJ's evaluation of a claimant who can perform less than a full range of sedentary work. *See Robert v. Commissioner of Social Security*, No. 1:22-cv-522, 2023 WL 6139396 at *4 (W.D. Mich. Sept. 20, 2023); *Abraham v. Commissioner of Social Security*, No. 1:08-cv-117, 2008 WL 4738333 (W.D. Mich. Oct. 24, 2008). SSR 96-9p is not applicable here because the ALJ is evaluating a claimant who is capable of performing both light and sedentary work. *Id*. Nevertheless, plaintiff's ability to "maintain body equilibrium" is relevant to her claim. *See, e.g.*, SSR 83-14, 1983 WL 31254 (limitations of nonexertional activities such as maintaining body equilibrium "can affect the capacity to perform certain jobs at all levels of physical exertion").

In reviewing the medical record, the ALJ noted that plaintiff exhibited an antalgic gait during medical appointments in February 2020, July 2020, and October 2020.[6] PageID.42. At the administrative hearing on November 10, 2021, plaintiff testified that she started using a walker "like a half a year ago or so [*i.e.*, around May 2021]" because she was "falling often" and stating that "I'm so breakable I wouldn't go anywhere without [sic] walker." PageID.66.[7] Plaintiff points out that a clinical note prepared by her treating nurse practitioner in July 12, 2021 states, "She has required the use of a walker to help with balance over the last 2-3 months. She often feels like her knees will give out on her[.] She was complaining of chronic bilateral knee pain in October and x-rays were ordered at that time but not completed." PageID.725. The record also indicated that plaintiff had an antalgic gait. PageID.738. On October 11, 2021, plaintiff's gait was described as "antalgic and walker." PageID.736.

Plaintiff's medical records indicate that she had an antalgic gait as early as February 2020, regularly used a walker starting in April or May 2021, and that she appeared at two medical appointments with a walker. This is contrary to the ALJ's finding that plaintiff did not present to medical appointments with a walker (*i.e.*, "nor did treating notes indicate that she presented to appointments with a walker or a cane"). PageID.38-39. As discussed, the ALJ later stated that plaintiff did appear with a walker at times (*i.e.*, "the record <u>generally</u> fails to note any assistive device present at her medical appointments"). PageID.44 (emphasis added). Finally, while plaintiff had a history of antalgic gait and the using a walker, the ALJ's RFC determination did not account for plaintiff's use of a walker or her ability to maintain balance or equilibrium.

---

[6] "Antalgic gait is defined as a limp adopted so as to avoid pain on weight-bearing structures, characterized by a very short stance phase." *Mukes v. Commissioner of Social Security*, 946 F. Supp. 2d 737, 742 , fn. 10 (S.D. Ohio 2013).

[7] The Court notes that plaintiff initially referred to using a wheelchair, but later clarified that she used a walker. PageID.65-66. This miscommunication was likely due to "an interpretive problem." PageID.66.

As discussed, the medical records indicate that plaintiff had an antalgic gait since February 2020, and plaintiff testified that she started using the walker because she was "falling often" around April or May 2021. In this regard, the ALJ made inconsistent findings with respect to whether plaintiff appeared at medical appointments with a walker. Here, the Court cannot follow the path of the ALJ's reasoning with respect to whether plaintiff's symptoms require her to use a walker to keep her balance. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) on this ground as well. On remand, the ALJ should re-evaluate whether plaintiff's symptoms require her to use a walker.

## IV.     RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should (1) re-evaluate the limiting effect of plaintiff's symptoms, and (2) re-evaluate whether plaintiff's symptoms require her to use a walker, and (3) make changes to plaintiff's RFC consistent with this re-evaluation.

Dated: February 26, 2024                          /s/ Ray Kent
                                                  RAY KENT
                                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).